UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL LORING, | * | CIV 18-4034 |
| Plaintiff, | * | |
| vs. | * | MEMORANDUM OPINION AND ORDER |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

Plaintiff Daniel Loring ("Loring") brought this pro se lawsuit against the United States of America alleging legal malpractice by two Assistant United States Attorneys ("AUSAs") who handled a civil lawsuit filed under the Fair Housing Act on Loring's behalf. Pending before the Court are several motions filed by Loring. (Docs. 78, 80, 81, 83, 95 and 104.) In addition, the United States has moved for sanctions and for summary judgment in its favor. (Docs. 73 and 97.) For the following reasons, the Court grants the United States' motion for summary judgment and denies the remaining motions.

## PROCEDURAL HISTORY

Loring originally brought this lawsuit against the United States of America, the Department of Justice, and the Executive Office for United States Attorney's General Counsel. The United States is the only proper defendant in an action brought under the Federal Tort Claims Act ("FTCA") based on acts performed by individual federal employees during the course and scope of their employment. Thus, in an Opinion dated December 18, 2018, this Court granted the defendants' motion to dismiss the Department of Justice and the Executive Office for United States Attorney's General Counsel. (Doc. 38.)

This Court also granted the United States' Rule 12(b)(6) motion to dismiss most of Loring's claims. (Doc. 38.) Loring's legal malpractice allegations in his complaint were found to be sufficient to survive the motion to dismiss. *Id.* Though Loring pleaded facts sufficient to state a legal malpractice claim, his motion for summary judgment was denied. *Id.* It could not be determined as a matter of law that the AUSAs were negligent in their representation of Loring, and the Court held that Loring needed to submit an expert opinion to establish negligence. *Id.* at 10 ("Because this is

not a clear and palpable case such as expiration of a statute of limitations, Loring will need to submit an expert opinion to establish that the Assistant United States Attorneys were negligent.")

After the Answer was filed, the parties were unable to agree on a proposed discovery plan, and on May 8, 2019, this Court issued a Rule 16 Scheduling Order. *See* Doc. 64. The deadline for Loring to disclose his expert witnesses was June 14, 2019. *Id.* at ¶ 4. The Scheduling Order provided, in part, "[t]hat Plaintiff is advised that under applicable law, a legal malpractice claim such as this one, requires expert testimony to support the claim." *Id.* at ¶ 7. On June 13, 2019, Loring moved for a 90-day extension of time to find an expert. Doc. 70. The government did not object to the extension. Doc. 71. The extension was granted and the Rule 16 Scheduling Order was amended to change the deadline for Loring to disclose expert witnesses to September 16, 2019. *See* Doc. 72 at ¶ 5. Loring was again reminded that he needed expert testimony to substantiate his legal malpractice claim. *Id.* at ¶ 8.

On July 23, 2019, Loring served the United States with a document indicating his intention to act as his own expert witness. Doc. 99, Statement of Facts at ¶ 4; Exhibit A to the Declaration of Delia M. Druley. Loring said he would move the Court to appoint an expert if the Court still required expert testimony. *See id.*, Exhibit A at p. 4-5. At a hearing on August 8, 2019, this Court explained to Loring that it would not appoint an expert witness and that Loring needed to hire one because he cannot serve as his own expert witness for his legal malpractice claim.[1] Doc. 108 at p. 8 (Transcript of Hearing).

Subsequently, Loring disclosed to the United States the names of several people he claimed would be his expert witnesses, including Orlando Lopez, an investigator for the United States Department of Housing and Urban Development (HUD), Matthew Mussetter, a trial attorney for HUD, Special Agent Gene Morrison with the Office of the Inspector General ("OIG"), and Paul Flogstad, the Sioux Falls Fair Housing Ombudsman. Statement of Facts at ¶¶ 5 and 6, Exhibits B and C to Druley Declaration. No expert witness reports were disclosed by Loring. Counsel for the

---

[1] The primary purpose of the hearing on August 8, 2019, was to address the United States' motion for sanctions for threats Loring made against lawyers for the United States. (Doc. 73.) The Court warned Loring that his case could be dismissed if he were to even intimate a threat against anybody in the future. (Doc. 108 at p. 6-7, 12.) No further allegations of threats by Loring have been made and, based on the Court's oral rulings at the hearing, the United States' motion for sanctions is denied as moot.

United States explained in letters to Loring that he needed expert reports, that he could not use federal employees as expert witnesses in his claim against the United States, and that non-lawyers cannot establish the standard of care for a legal malpractice claim. Statement of Facts at ¶ 7, Exhibit D to Druley Declaration.

Loring served the United States with two additional pleadings again indicating that he would rely on the federal employees as expert witnesses. Statement of Facts at ¶¶ 8 and 9, Exhibits E and F to Druley Declaration. Loring provided documents suggesting that he intended to rely on his complaints to the Department of Justice Office of Inspector General ("OIG") as his expert reports. *Id.* and Doc. 93.

On September 16, 2019, Loring served a pleading asserting that OIG Special Agent Gene Morrison is his expert witness. Statement of Facts at ¶ 10, Exhibit G to Druley Declaration. Loring attached a two page OIG complaint form to his pleading. *Id.* Loring also filed these documents with the Court. (Doc. 94.)

The United States filed its Motion for Summary Judgment on September 20, 2019. (Doc. 97.)

## FACTUAL BACKGROUND

On August 28, 2015, the United States filed a Fair Housing Act lawsuit on behalf of Loring alleging that the owners of Loring's apartment improperly discriminated against Loring, who is an individual with a disability because he required the use of a wheelchair due to an injury. *See* CIV 15-4137, Doc. 1. This unlawful discrimination ultimately resulted in the eviction of Loring from the apartment and an unfavorable rental reference from the owners. Loring was unable to find permanent housing as a result. The United States alleged that the apartment owners' violations were intentional, willful, and taken in reckless disregard of Loring's rights. The Complaint sought injunctive relief against the owners to prohibit them from continuing their discriminatory practices against individuals with disabilities, to order them to take any affirmative steps necessary to restore Loring to the position he would have been in but for the discriminatory conduct, and to take such steps as would be necessary to prevent the recurrence of any discriminatory conduct in the future. The lawsuit also sought an award of monetary damages to Loring pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

Loring had the right to obtain a private lawyer of his choice to represent him in the Fair Housing Act case, but he never did so. Loring also had the right to intervene in the Fair Housing Act case. *See* 42 U.S.C. § 3612(o)(2) ("Any aggrieved person with respect to the issues to be determined

in a civil action under this subsection may intervene as of right in that civil action."). Loring never intervened. The AUSA informed Loring of these rights several times. (Doc. 1-2 at p. 50, Email from Alison Ramsdell dated May 12, 2016) ("As I indicated several times before, you have the right to hire an attorney and intervene in this matter. Until you do so, the actual and only Plaintiff in this case is the United States.")

An email from Loring to the AUSA dated August 29, 2017, shows that he was willing to settle for $15,000. (Doc. 1-11 at p. 39-40) ("I wish I would have taken the $15,000 last December.") On October 2, 2017, the AUSA emailed Loring that the defendants had offered $15,000 to settle. (Doc. 1-11 at p. 43.) Loring responded with an email on October 12, 2017, stating, "Go ahead and settle the case, can I get paid right away?" (Doc. 1-11 at p. 44.) After the AUSA told Loring that she would draft a settlement agreement, he responded, "Please just get a settlement agreement drafted and I will make an appointment to come and see you when you have it ready and I will come and sign whatever I have to so it can just get settled and it's over with." (Doc. 1-11 at p. 45.)

Loring does not provide copies of emails showing how the AUSA was able to get an additional $5,000 to settle the case for $20,000, but he does provide a copy of the Settlement Agreement which was executed in November of 2017. (Doc. 1-11 at 96-102, Executed Settlement Agreement.) The owners agreed to pay Loring $20,000 in exchange for a release of all claims against them. (*Id.* at 98, ¶ 8.) Loring signed the release on November 23, 2017. (Doc. 1-11 at p. 102.)

The Settlement Agreement noted that the apartments had been sold and that none of the defendants were in the business of owning or managing residential property to which the Fair Housing Act applies. (*Id.* at 98, ¶ 11.) The district court dismissed the Fair Housing Act case on November 27, 2017. *See* CIV 15-4137, Doc. 23.

On April 3, 2018, Loring filed this lawsuit, asserting numerous claims arising out of the handling and settlement of the Fair Housing Act case. (Doc. 1.) The only remaining claim is Loring's legal malpractice claim against the AUSAs.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its

4

case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quotation omitted).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 9A Charles Alan Wright et al., Federal Practice and Procedure, § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). All facts presented to the district court by the non-moving party are accepted as true if properly supported by the record. *See Beck v. Skon*, 253 F.3d 330, 332–33 (8th Cir. 2001). Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The local rules for this district require that the moving party on a motion for summary judgment submit a statement of the material facts as to which it contends there is no genuine issue to be tried. D.S.D. CIV. LR 56.1(A). The opposing party is required to respond to each numbered paragraph in the moving party's statement of material facts, and to identify any material facts as to which it contends there exists a genuine material issue to be tried. D.S.D. CIV. LR 56.1(B). All material facts set forth in the moving party's statement of material facts are deemed admitted if not controverted by the statement required to be served by the party opposing summary judgment. D.S.D. CIV. LR 56.1(D); *see also On Target Sporting Goods, Inc. v. Attorney General of the United*

5

*States*, 472 F.3d 572, 574 (8th Cir. 2007). Such rules are intended "to prevent a district court from engaging in the proverbial search for a needle in the haystack." *Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) (discussing a similar Iowa Local Rule). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (citing *Faretta v. California*, 422 U.S. 806, 834–35 n. 46 (1975)).

In this case, the United States filed a Statement of Undisputed Facts along with a supporting declaration and exhibits. (Docs. 99 and 100.) Loring filed a resistance to the motion for summary judgment in the form of his own affidavit and attached exhibits. (Doc. 101.) Loring relies for the most part on documents related to the complaint he filed with the OIG about the AUSAs who handled his Fair Housing Act case.

This Court now must decide whether Loring has met his burden of introducing admissible evidence sufficient to create a genuine issue of material fact as to the United States' liability. Specifically, as discussed below, Loring has the burden of proving the AUSAs failed to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in a particular locality. The United States urges that Loring's failure to introduce any expert testimony means he has not met this burden and, therefore, the United States is entitled to summary judgment.

## DISCUSSION

### 1. Loring's Allegations of Legal Malpractice

Among the allegations in his lengthy Complaint, Loring claims that the AUSAs committed legal malpractice in the Fair Housing Act case by not including enough factual information in the complaint and refusing to amend the complaint as he requested, failing to seek civil penalties from the defendants, and settling for an amount much less than the damages he claims to have suffered.

### 2. Elements of Legal Malpractice

The elements of a legal malpractice cause of action are "(1) the existence of an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual damage." *Zhi Gang Zhang v. Rasmus*, 932 N.W.2d 153, 162 (S.D. 2019), *cert. denied*, 2020 WL 871735 (U.S. Feb. 24, 2020) (quoting *Peterson v. Issenhuth*, 842 N.W.2d 351, 355 (S.D. 2014)).

6

### 3. Necessity of Expert Testimony

Under South Dakota law, the general rule is that a plaintiff bringing a claim for legal malpractice is required to present expert testimony to establish the standard of proper professional skill or care. *Nemec v. Deering*, 350 N.W.2d 53, 56 (S.D. 1984) (holding that in some cases of alleged negligence by a lawyer, "the plaintiff is required to show by expert testimony that the attorney failed to exercise a reasonable degree of care, skill and dispatch according to the standards of a particular community"). The South Dakota Supreme Court has further explained:

> In a malpractice action the jury decides, from evidence presented at trial by other lawyers called as expert witnesses, whether a lawyer possessed and used the knowledge, skill, and care which the law demands of him. The opinions and testimony of such experts are indispensable in determining questions which are unfamiliar to ordinary witnesses and, within that field, the opinions of lay witnesses are not admissible.

*Lenius v. King*, 294 N.W.2d 912, 914 (S.D. 1980) ((internal citation omitted). The South Dakota Supreme Court explained the rationale for the rule requiring expert testimony on the standard of care in a legal malpractice action:

> [E]xcept in clear and palpable cases (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice. The reason for this requirement is simply that a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent lawyer would have done under similar circumstances, and the jury may not be permitted to speculate about what the "professional custom" may be. Expert evidence as to the "professional custom" is required in malpractice actions against other professionals. Consistence demands a similar standard for attorneys.

*Id.* (quoting *Hughes v. Malone*, 146 Ga.App. 341, 247 S.E.2d 107, 111 (1978)). Because this is not a clear and palpable case of malpractice such as the expiration of a statute of limitations, Loring must provide the opinion of a lawyer, retained as an expert witness, as to whether the AUSAs possessed and used the knowledge, skill, and care which the law demanded of them in the Fair Housing Act case.

### 4. Loring's Contention That His Complaint to the DOJ's Office of the Inspector General ("OIG") and Other Documents from the OIG Constitute Expert Testimony

In his affidavit opposing the United States' motion for summary judgment, Loring relies on documents he sent to the OIG and documents he received from the OIG. He avers that he filed two

administrative claims regarding the AUSAs' alleged misconduct in handling the Fair Housing Rights case. Doc. 101, Affidavit of Daniel Loring at ¶ 3. The two complaints were filed with the OIG in June of 2017 and December of 2017. *See id.* and Doc. 101-1 at p. 16-19; Doc. 101-1 at p. 23-25.

Loring emphasizes the importance of a Memorandum from Gene Morrison, Special Agent in Charge at the OIG, to Robin Ashton, Counsel with the Office of Professional Responsibility for the Department of Justice. The Memorandum, dated July 10, 2017, states in relevant part:

> The attached complaint was received by this office.
> After reviewing this complaint, we have determined that an Investigation by the Office of the Inspector General is not warranted. Therefore, this matter is being referred to you for whatever action you deem appropriate.

Doc. 101-1 at p. 11. The OIG sent a letter to Loring dated July 10, 2017, explaining that the OIG "does not have jurisdiction to investigate allegations that a Department of Justice attorney has committed misconduct while exercising his or her litigation authority." Doc. 101-1 at p. 15. This letter provided Loring with the addresses of the appropriate agencies, including that DOJ's Office of Professional Responsibility, for him to direct his future correspondence.[2]

After Loring sent additional information to the OIG, Agent Morrison forwarded that, too, to Robin Ashton at the Office of Professional Responsibility on August 2, 2017. Doc. 101-1 at p. 15.

Loring wrote another letter to the OIG dated December 11, 2017, forwarding a copy of the Judgment dismissing the Fair Housing Act lawsuit. Doc. 101-1 at p. 23-25.

At a date uncertain, Loring sent another letter to the OIG purporting to amend his complaint due to "the lack of any kind of response" from the Office of Professional Responsibility. Doc. 101-1 at p. 27. It was Loring's opinion that the AUSAs should have already been indicted on felony criminal charges. *Id.* The OIG responded with a letter dated March 1, 2018, referring to the July 10, 2017 letter to Loring and again advising him that the OIG does not have jurisdiction to investigate his allegations of misconduct by a DOJ attorney. Doc. 101-1 at p. 30-31.

---

[2] The Office of Professional Responsibility for the Department of Justice has jurisdiction to investigate allegations of misconduct against Department attorneys relating to the exercise of their authority to investigate, litigate, or provide legal advice. Doc. 100, Druley Declaration. at ¶ 13, Ex. J. The Office of Professional Responsibility found no abuse of the discretionary authority vested in the AUSAs who handled Loring's Fair Housing Act case. *See* Druley Declaration, Ex. J. The Office of Professional Responsibility directly informed Loring of this finding. *Id.*

8

Finally, Loring includes a copy of an OIG complaint form which was provided to him during discovery. Doc. 101-1 at p. 36-37. The "Details" section of the form summarizes Loring's allegations against the AUSAs as reported by Loring. *Id.* at 36. The "Remarks" section of the Complaint Form is redacted. *Id.* at 37. Loring contends that the United States should be ordered to provide him with an unredacted copy of the Complaint Form. The United States responded that the redactions Loring complains of "were done to protect personally identifiable information pursuant to the Privacy Act, 5 U.S.C. § 552a, and to prevent the disclosure of law enforcement sensitive information, which would reveal OIG's internal processes." Doc. 102, Reply Brief at p. 3.

Loring asks this Court to accept his complaint to the OIG as evidence of malpractice. He appears to ask the Court to infer malpractice because the OIG did not state the absence of malpractice. *See, e.g.*, Doc. 65 at pp. 4 and 5 (Loring explains his argument that if the OIG Investigations Division would have found no misconduct by the AUSAs, Loring would have received a letter stating that the OIG found no attorney misconduct and that his case is closed). Loring names OIG Special Agent Gene Morrison as his expert witness. Doc. 101-1 at p. 8.

However, Agent Morrison was not hired by Loring to be an expert witness. Furthermore, Loring has not demonstrated that Agent Loring is a lawyer or has special knowledge, skill, experience, training, or education in the area of legal practice, and thus he does not meet the necessary prerequisites of an expert witness on the standard of care for lawyers. In fact, nothing submitted by Loring sets forth the relevant standard of care or explains how specific acts by the AUSAs, in the opinion of a legal expert, fell below the standard of care.[3]

---

[3] For these same reasons the Court also denies Loring's Motion for Court to Modify Subpoena. (Doc. 83.) There, Loring is attempting to obtain documents related to his OIG complaint directly from the OIG. Loring subpoenaed the documents from the OIG and he is not satisfied that the documents were provided by the OIG to the lawyer representing the United States in this case, who then served the documents on Loring. *See* Doc. 94. It appears that Loring believes he should receive an unredacted copy of the complaint form completed by the OIG because he thinks it will provide the expert testimony he needs in support of his legal malpractice claim. *Id.* However, as the Court has explained, actions based on a lawyer's alleged deviation from professional practice standards require expert testimony of these standards, as well as the deviations from these standards. A complaint form prepared by the OIG based on Loring's reports of lawyer misconduct does not amount to expert testimony. Special Agent Morrison with the OIG has not been retained as an expert by Loring and there is no showing that Agent Morrison is qualified to testify as to the standard of care required of a lawyer, or even that he has any opinion at all in this case. There is no reason to modify Loring's subpoena of OIG documents, and he cites no authority that would allow the Court to do so.

Having carefully reviewed the documents Loring filed in this case, including but not limited to those filed in opposition to the United States' motion for summary judgment, this Court does not find any evidence of a breach of a legal standard of care that is so clear that a jury would recognize it as malpractice without the opinion of an expert witness establishing a breach of the standard of care. The Court's close review of the record does not reveal that the AUSAs' representation of Loring exhibited any obvious want of care and skill as to fall within the exception to the expert witness requirement when malpractice is alleged to have taken place. Whether refusing to amend the complaint in the Fair Housing Act case, failing to seek civil penalties from the defendants, or settling the case for much less than Loring had hoped for, were breaches of the standard of care would require the testimony of a legal expert in order to assist a jury in understanding the applicable standard of care and to evaluate the lawyers' actions in light of that standard.

Loring has therefore failed to come forward with evidence to create a genuine issue of material fact that the AUSAs failed to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in a particular locality. Therefore, the Court finds summary judgment in favor of the United States is appropriate.

**5. Loring's Pending Discovery Motions (Docs. 78, 80, 81)**

On July 8, 2019, Loring served twenty requests for admissions and two interrogatories on the United States. *See* Doc. 86-1 (Exhibit A to Declaration of Delia Druley). On August 7, 2019, Loring mailed the United States a motion to compel answers to his discovery requests. *See* Doc. 78 at p.2. The motion was filed on August 8, 2019. *Id.* Loring asserted in the motion to compel that the United States' responses were untimely. *Id.* However, the responses were timely served by the United States by letter dated August 8, 2019. *See* Docs. 86-2 and 86-3 (Exhibits B and C to Druley Declaration).

On August 12, 2019, Loring filed a motion to amend his motion to compel discovery, essentially asking the Court to allow him to correct some wording errors in his discovery requests. (Doc. 80.) However, the responses had already been completed and served by the United States. Thus there is no reason for Loring to amend his motion to compel.

Loring conceded that the United States' responses to his discovery requests were timely, but he takes issue with the sufficiency of the United States' responses and its failure to admit his requests for admission. (Docs. 81 and 82.)

Motions to compel discovery are governed by Federal Rule of Civil Procedure 37. Rule 37(a)(1) and Local Rule 37.1 require the parties to make a good faith effort to resolve any discovery disputes prior to filing a motion to compel. FED. R. CIV. P. 37(a)(1); LR 37.1; *see also Black Hills Molding, Inc. v. Brandom Holdings, LLC*, 295 F.R.D. 403, 409 (D.S.D. 2013) ("A party requesting the discovery is entitled to move for [an order] compelling disclosure after having made a good faith effort to resolve the dispute by first conferring with the other party."); *Pierce v. Fremar*, LLC, 2010 WL 3420169, *1 (D.S.D. Aug. 27, 2010) ("Email, letters, or, even better, direct conversation between the attorneys will satisfy the [meet and confer] requirement."). Additionally, Rule 37 and LR 37.1 require that the filing party include a certification detailing the good faith efforts of the parties to resolve the discovery disputes. FED. R. CIV. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery in an effort to obtain it without court action."); LR 37.1 ("A party . . . must file a separate certification describing the good faith efforts of the parties to resolve the dispute.").

Here, Loring failed to make a good faith effort to meet and confer with counsel for the United States in order to resolve his dissatisfaction with the responses to his discovery requests prior to filing the motion to compel.

The Court also rejects Loring's claim that the United States' responses are insufficient. Loring served the United States with twenty requests for admission accompanied by two interrogatories.[4] Many of Loring's requests ask the United States to ratify Loring's own legal conclusions based on his interpretation of the facts. The United States is not required to agree with the facts or the legal conclusions that Loring sets forth in his requests for admission. Requests for admission are not to be used as a means "to establish facts which are obviously in dispute or to answer questions of law." *Kosta v. Connolly*, 709 F.Supp. 592, 594 (E.D.Pa.1989) (citing *Driver v. Gindy Manufacturing Corp.*, 24 F.R.D. 473, 475 (E.D.Pa. 1959)).

---

[4] The Interrogatories require factual substantiation for any response that the United States provided in the Requests for Admission.

11

The United States' answers comply with the directives of Rule 36(a) by either admitting, denying, or responding with qualifications.[5] Though the United States objected to the discovery requests, it also included denials and clearly explained its answers. For example, the United States explained if its interpretation of a given document differed from Loring's construction of that document. While Loring does not like the United States' responses, the United States' denials are explained. Nothing further is required. After careful review of Loring's requests for admission and the United States' responses, the Court concludes that the responses are adequate and Loring's discovery-related motions are denied. (Docs. 78, 80 and 81.)

**6. Loring's Motion for Judgment as a Matter of Law and Motion for Entry of Default (Docs. 95 and 104)**

Loring asks the Court to enter judgment in his favor and requests damages in the amount of $26,400,000. (Docs. 95 and 104.) To support his position, Loring contends that the lawyer representing the United States in this case withheld records and redacted facts in responding to Loring's subpoena to the Department of Justice Office of the Inspector General. Loring also accuses the United States' lawyer of altering and destroying other documents such as the medical release he signed in the Fair Housing Act case, and of refusing to participate in discovery. After careful review, the Court concludes that Loring's accusations are unfounded.

Even applying the liberal construction to which pro se pleadings are entitled, the Court is unable to find support for judgment in Loring's favor. Loring mainly relies on documents from the OIG having to do with his complaints to that agency about the conduct of the AUSAs in his Fair Housing Act case. He states that the "determinations, findings, decision and rulings" on his administrative claims constitute his evidence of malpractice by the AUSAs who handled that case.

---

[5] Rule 36(a)(4) provides:

> ***Answer.*** If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

*See* Doc. 95 at p. 2. However, the only finding that the Court is able to locate in the record is from the Office of Professional Responsibility finding no abuse of the discretionary authority vested in the AUSAs who handled Loring's Fair Housing Act case.[6]

As explained above, Loring has failed to come forward with an expert opinion to support his legal malpractice claim. At numerous times throughout his pleadings, Loring mentions that some documents are stamped by the agency with "CIVIL RIGHTS/CIVIL LIBERTIES CODE 688." Loring says code 688 "refers to State Jurisdiction in the Criminal Resources Manual 601-799" on the DOJ website. *See* Doc. 95 at p. 15. Loring contends that this is his "expert witness fingerprint testimony." *See id.* The Court notes that there are documents in the record with the stamp referred to by Loring, but the Court cannot conclude that the stamp is Loring's expert witness testimony. For these reasons, Loring is not entitled to judgment in his favor, and his motions are denied. (Docs. 95 and 104.)

## CONCLUSION

For the reasons set forth above, the Court concludes there is no genuine issue of material fact and judgment for the United States should be entered as a matter of law. Accordingly,

**IT IS ORDERED**:

1. That the United States' Motion for Summary Judgment, Doc. 97, is granted with prejudice;

2. The United States' Motion for Sanctions, Doc. 73, is denied as moot; and

3. That Loring's motions, Docs. 78, 80, 81, 83, 95 and 104, are denied.

---

[6] Loring received 314 pages of documentation from the DOJ Office of Inspector General in response to his subpoena. *See* Declaration of Delia M. Druley, Ex. A, March 21, 2019 letter to Loring re: Subpoena Response. According to the United States, Loring has received "every document in the Office of the Inspector General's possession related to his claims." Doc. 88 at p. 2.

13

Dated this 17th day of March, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

14